# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| Evan Hoobler | ) |
| | ) Demand for Jury Trial |
| | ) Case No. |
| *Plaintiff,* | ) |
| | ) COMPLAINT |
| v. | ) |
| | ) |
| Harbor Freight Tools USA, Inc., | ) |
| | ) |
| *Defendant.* | ) |

## COMPLAINT & DEMAND FOR JURY TRIAL

Comes now Plaintiff Evan Hoobler for his complaint for damages against Defendant Harbor Freight Tools USA, Inc. ("Defendant").

## NATURE OF ACTION

1. This is a claim arising from the deceptive and unconscionable business practices of Defendant in the advertising, packaging, and labeling of an organic bonded abrasive wheel[1] that was manufactured, produced, distributed, and/or sold by Defendant, which failed and caused Plaintiff to suffer injuries for which Defendant is strictly liable.

2. Plaintiff purchased a Warrior 4" Cut-Off Wheel (the ("Defective Product") from one of Defendant's stores. While using the Defective Product as

---

[1] Defendant manufactures and/or sells at least 30 different types of bonded abrasive wheels under the brands Bauer, Warrior, Hercules, and Chief. They all suffer from the same defect: a failure to include a clear expiration label.

1

instructed, on February 25, 2021, the Defective Product failed and caused him to suffer serious injuries.

3. The Defective Product is characterized as an organic bonded abrasive wheel because it is comprised of abrasive materials (e.g., aluminum oxide) that are bonded together with resin. The resin is an organic material that degrades over time and thus leads to the product expiring and failing, without the consumer's knowledge.

4. Specifically, the Defective Product contains the following defects:

   a. Defendant manufactures the wheels with a polymer compound that is susceptible to oxidation;

   b. Because Defendant's polymer compound is subject to oxidation, it degrades relatively rapidly and becomes brittle within a few short years of manufacture;

   c. The resin used to bond the abrasive absorbs moisture over time;

   d. Because this resin absorbs moisture over time, it deteriorates relatively rapidly and becomes weak within a few short years of manufacture;

   e. Defendant omits these material facts from its consumers, refusing to put them on the packaging or labeling;

   f. Defendant fails to provide an adequate warning that the product has an expiration date; and

   g. Defendant fails to include an expiration date on the label.

5. Defendant sells abrasive wheels at Harbor Freight retail store locations throughout the country. Even though the Defective Product was made with material that expired, as described above, Defendant sold it as products that were made with material that does not expire.

6. Defendant sold the Defective Product to Plaintiff without adequate advertising, packaging, and labeling that identified that the abrasive wheel product was made with material that expired.

7. As a result of being made with material that expired, the wheels have a shelf life or expiration date after which they become too brittle and/or weak to safely and reliably use.

8. Prior to selling the Defective Product, Defendant knew of, or should have known of, its defects.

9. A leading manufacturer of abrasives cautions: "Using a disc outside of its expiry date *will* lead to disc failure and a high probability of causing severe injury to the operator and anyone nearby. Retailers also have the responsibility not to sell discs that are out of date." (emphasis in the original)[2]

10. For decades, the Health and Safety Executive Committee states in its Safety in the use of abrasive wheels handbook the following: "All organic bonded

---

[2] Sunland Abrasives. *3 Fascinating Facts About Cutting and Grinding Discs You Might Not Have Known*, June 12, 2020, accessible at https://www.sunlandabrasives.com/3-fascinating-facts-about-cutting-and-grinding-discs-you-might-not-have-known/ (last accessed on August 19, 2022)

wheels for hand-held applications **will bear a use-by date** of three years from the date of manufacture." (emphasis added).

11. The Federation of European Producers of Abrasives (FEPA) establishes an industry standard for expiration date or shelf life date for use of three years. United States manufacturers of abrasive wheels recognize FEPA as an industry standard.

12. Similarly, a worldwide trade association, the Organization for the Safety of Abrasives, publishes safety material and literature on the "Product marking *requirements* for bonded abrasives." The Organization mandates that specific inscriptions be added to abrasives: "The date of expiry *shall* at the longest be within 3 years from the date of manufacture. It is expressed as month and year e.g. 04/2023."

13. Another manufacturer of wheels publicly admits that "It has always been Saint-Gobain's recommendation that Resinoid Bonded grinding wheels be used up within 2 years from the date of manufacture."

14. One of Defendant's competitors in the United States, Stanley Black & Decker (selling its product under the label "DeWalt"), publishes a "Bonded Abrasive Safety Guide" that states, "DON'T use a wheel that is past its expiration (EXP) date as marked near center of wheel, if provided."[3] On the wheels' label, DeWalt includes "EXP" and the date of expiration.

---

[3] DeWalt webpage, "Abrasive Safety Guides"
https://bynder.sbdinc.com/m/24673f3f64ee1262/original/DW_Abrasive_Safety_Guide_EN_DOC1.pdf (last accessed on January 13, 2023).

15. Likewise, two additional competitors of Defendant, Bosch and AvantiPro, include on their abrasive wheel products the bare minimum inscription that states, for example, "EXP 1/2020"[4] and "EXP 4/2011,"[5] respectively.

16. Industry standards also require Defendant to test its wheels to determine what, if any, expiration date they should have.

17. Despite all this, Defendant chooses to simply ignore its products' defects, as it does not have a system in place that warns consumers about the expiration date, or a system in place that instructs its stores and employees to remove expired abrasive wheels from the shelves. As a result, Defendant routinely causes expired wheels to be sold to consumers.

18. These are material omissions and defects that caused Plaintiff's injuries, and subjects consumers to an unreasonable risk of injury or death because abrasive wheels used after their expiration date fail and cause serious injury to the user and any bystander.

19. Below is a picture of Plaintiff's injuries which occurred because the Defective Product failed:

---

[4] Bosch webpage, Cutting Wheels https://www.boschtools.com/us/en/boschtools-ocs/cutting-wheels-for-die-straight-grinders-cwdg1m415-27926-p/ (last accessed on January 13, 2023)
[5] Home Depot webpage, Accessories https://www.homedepot.com/p/Avanti-Pro-4-1-2-in-x-1-16-in-x-7-8-in-Thin-Kerf-Metal-Cut-Off-Disc-15-Pack-PBD045063115F/301454110 (last accessed on January 13, 2023)



20.     The failure to include an expiration date on the wheel is a material omission that a reasonable consumer would want to know.

## PARTIES

21.     Plaintiff Evan Hoobler is a resident and citizen of the state of Kansas.

22.     Defendant Harbor Freight Tools USA, Inc. is incorporated in the state of Delaware, has its principal place of business in Calabasas, California, and is registered in the state of Kansas and can be served at Corporate Creations Network Inc., 4601 E. Douglas Avenue #700, Wichita, Kansas 67218. Defendant is engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting, supplying and/or selling, either directly or indirectly, through third parties and/or related entities, the Defective Product.

## JURISDICTION AND VENUE

23. This Court has diversity jurisdiction over this action because Plaintiff is a resident of Kansas and Defendant is a resident of California, and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a).

24. This Court has personal jurisdiction over Defendant in that Defendant transacts business within the state of Kansas and committed one or more tortious acts within the state of Kansas.

25. Defendant transacted business and/or committed tortious acts within the state of Kansas. Defendant designs, manufactures, processes, distributes, installs, uses, and/or sells dangerous and/or defective products in Kansas. Defendant placed the Defective Product and dangerous products into the stream of commerce, sold and/or supplied said products for use, used said products, and/or transacted business and committed tortious acts in Kansas from which Plaintiff's claims arise.

26. Venue is proper in this Court pursuant to 28 U.S.C. §1391 in that a substantial part of the events that gave rise to the claims in this case occurred in this District in that Plaintiff's injuries occurred in Montgomery County, Kansas.

## FACTUAL ALLEGATIONS

27. The Defective Product made the subject of this suit, which is manufactured, produced, distributed, and/or sold by Defendant, is unreasonably dangerous.

28.     Bonded abrasive wheels, such as here, are used to cut metal and concrete. The wheels are attached to power tools (e.g., angle grinders, chop saws) that spin at speeds in excess of 5,450 RPM to 25,500 RPM. Below is an exemplar of the Defective Product that injured Plaintiff:



29.     Plaintiff is a consumer and was involved in a consumer transaction when he purchased the Defective Product for personal, family, household, and/or business purposes from one of Defendant's stores in Oklahoma. K.S.A. 50-624. Plaintiff is a protected consumer, pursuant to K.S.A. 50-676(b), in that he has a disability that substantially limits one or more major life activities.

30.     The Defective Product Plaintiff purchased is an organic bonded abrasive wheel. As shown above, it does not have an expiration date on it, nor is there any warning alerting Plaintiff that the Defective Product expires.

31.     Defendant concealed or otherwise failed to disclose, reveal, or provide notice to Plaintiff in Defendant's advertising, packaging, labeling or otherwise that

the product was defective, as described above, in violation of K.S.A. 50-626 and K.S.A. 50-627 (noting that the violation can occur before, during or after the transaction).

32. The Defective Product was not fit for the ordinary purposes for which the products are used in that they cannot be safely or reliably used because they contain defective material which expires. There is no way for a reasonable consumer to know these products expire, including when they expire and if they have already expired. Simply put, Plaintiff was left in the dark about material facts (i.e., the expiry date) in violation of industry standards.

33. The existence of this defect and the expiration date are material facts that a reasonable consumer would consider when making a purchase and using the product, given that, as described above, these products cannot be safely or reliably used once they expire.

34. Plaintiff was injured on February 25, 2021, in Independence, Kansas, while using the Defective Product, as instructed by Defendant to cut metal, when it failed, cracked, and exploded into multiple pieces, severing Plaintiff's finger and causing him to suffer permanent injuries.

35. Unbeknownst to Plaintiff, the Defective Product failed because it was expired, and Defendant omitted and/or concealed this material information from Plaintiff.

36. Defendant knew of the products' defects yet failed to disclose them to Plaintiff.

37. In fact, numerous customer complaints have been made directly to Defendant on Defendant's website about the Warrior 4" cut-off wheel—and other substantially similar abrasive wheels—failing and breaking.

38. Defendant had the capability and means to create an alternative label that clearly disclosed the defect, as well as provide and warn about the expiration date, yet it failed to do so.

39. As described above, industry standards required Defendant to include a clear expiration date on the label of the Defective Products.

40. Defendant is currently selling abrasive wheels that have already expired. For example, the below product is for sale at Defendant's stores:



41. While impossible for a reasonable consumer to identify that the abrasive wheel is expired, buried within the ring of the wheel is a combination of ambiguous numbers: "37297 092021." The last six digits, on information and belief, are an admission by Defendant that the wheel expired in September 2021.

42. Again, a reasonable consumer has no way to know what these ambiguous numbers mean. Even so, there are absolutely no markings or warnings that indicate or suggest that this expiration date is due to material that oxidizes and becomes brittle and/or resin that absorbs moisture, deteriorates, and becomes weak. Defendant omits these material facts.

43. The Defective Product that injured Plaintiff did not bear any type of markings that described when it expired.

44. This is not an isolated incident. Defendant has 29 stores in the state of Missouri, 14 stores in the state of Kansas, and more than 1,200 around the country. On information and belief, several of these stores continue to sell expired abrasive wheels to customers and/or have expired wheels on Defendant's shelves waiting to be purchased. Thus, the risk that customers will continue to purchase expired or nearly expired wheels is imminent and, absent injunctive relief, will continue to occur in the future.

45. If Defendant had provided necessary labeling and warnings on the Defective Product (i.e., that the product expires and to not use after the expiration date), Plaintiff would have heeded the warning and he would not have been injured.

## CLAIMS FOR RELIEF

## COUNT I – KANSAS CONSUMER PROTECTION ACT

46. Plaintiff re-alleges and incorporates herein all other allegations in this Complaint.

47. The acts and practices engaged in by Defendant, and described herein, constitute deceptive and/or unconscionable business practices in violation of the Kansas Consumer Protection Act, K.S.A §50-623 *et seq*.

48. Defendant engaged in unlawful practices including willful deception, false promises, misrepresentation, and/or the concealment, suppression, or omission of material facts—specifically, the failure to include a clear expiration date—in connection with the sale, distribution, advertisement, and use of the Defective Product violation of K.S.A. §50-626 and §50-627.

49. Plaintiff purchased the Defective Product a few weeks before he was injured, a product that was falsely represented, as stated above, including the willful failure to include a clear expiration date on the wheel, and the willful concealment, suppression or omission of this material fact, in violation of the Kansas Consumer Protection Act, and as a result Plaintiff suffered injuries in that Defendant took advantage of Plaintiff's inability and ignorance of that the fact that the Defective Product expires.

50. At the time of purchase and use of the Defective Product, Plaintiff, had no information to suggest that the Defective Product had an expiration date that,

after which, the product would give way, crack, split, explode, or fail with reasonably anticipated use.

51. Plaintiff acted as a reasonable consumer would in light of all circumstances.

52. Defendant's actions and omissions would cause a reasonable person to enter into the sale and transaction and use the Defective Product that resulted in injury to Plaintiff.

53. As a result of Defendant's actions and omissions, Plaintiff suffered serious injuries and damages, including mental anguish and pain, disfigurement, incurred medical expenses, and Plaintiff's ability to function, work, labor, earn wages, and enjoy the ordinary pursuits of life have been seriously impaired.

54. Plaintiff also seeks injunctive relief, enjoining Defendant from selling the wheels without a clear and unambiguous expiration date. Even though Plaintiff now has knowledge that Defendant's products expire, he still is left in the dark as to when the products expire because Defendant continues to omit this material information, and thus absent injunctive relief, Plaintiff and consumers will continue to be subjected to Defendant's deceptive and unconscionable acts.

55. At the time of Defendant's design, manufacture, processing, distribution, and/or sale of the Defective Product, Defendant knew of the dangerous condition of said product and supplied it with deliberate and/or intentional disregard for making any warning, instruction, or other precaution to prevent injuries and

thereby showed complete indifference to and/or conscious disregard for the safety of others. Defendant specifically placed profits ahead of the health and safety of others by intentionally omitting and concealing material facts about the Defective Product's expiration date. Defendant's conduct which caused this damage was willful, wanton, and/or in reckless disregard for the rights of Plaintiff.

WHEREFORE, Plaintiff prays for judgment against Defendant for actual damages in excess of the jurisdictional limit as determined at trial, punitive damages, injunctive relief, for the costs of this action, attorney's fees, and for such further relief as the Court deems fair and reasonable.

## COUNT II – STRICT LIABILITY IN TORT -- FAILURE TO WARN

56. Plaintiff re-alleges and incorporates herein all other allegations in this Complaint.

57. Defendant designed, manufactured, processed, packaged, distributed, marketed, sold and supplied, and labeled the Defective Product at issue, without including and/or making adequate instructions on the use of the product to reduce and/or eliminate the dangerous components thereof, and/or without warnings that the Defective Product expires and that it would crack, split, splinter, warp, explode and otherwise fail and become dangerous and cause injury.

58. As a result of Defendant's failure to adequately instruct on use, including the expiration date, and/or avoidance or to warn of the dangerous

characteristics of the product, said product was defective and unreasonably dangerous when put to the use reasonably anticipated by Defendant.

59. As a direct and proximate result of the dangerous and defective condition of Defendant's product and Defendant's failure to instruct and/or warn of the dangers thereof, Plaintiff suffered serious injuries and damages, including mental anguish and pain, disfigurement, incurred medical expenses, and Plaintiff's ability to function, work, labor, earn wages, and enjoy the ordinary pursuits of life have been seriously impaired.

60. At the time of their design, manufacture, processing, packaging, distribution, marketing, sale, supply and/or use of the Defective Product at issue, Defendant knew of the dangerous condition of said product and supplied it with deliberate and/or intentional disregard for making any warning, instruction, or other precaution to prevent injuries and thereby showed complete indifference to and/or conscious disregard for the safety of others. Defendant specifically placed profits ahead of the health and safety of others by intentionally omitting and concealing material facts about the Defective Product's expiration date. Defendant's conduct which caused this damage was willful, wanton, and/or in reckless disregard for the rights of Plaintiff.

WHEREFORE, Plaintiff prays for judgment against Defendant for actual damages, in excess of the jurisdictional limit and as determined at trial, punitive

15

damages, for the costs of this action, and for such further relief as the Court deems fair and reasonable.

## **COUNT III -- NEGLIGENCE**

61. Plaintiff re-alleges and incorporates herein all other allegations in this Petition.

62. Defendant designed, manufactured, distributed, tested, sold, applied, used and/or supplied the Defective Product at issue.

63. Defendant held itself out as a corporation capable of reasonably and prudently developing, manufacturing, marketing, supplying, testing, distributing, applying, using, supplying, and selling the Defective Product at issue and therefore had the duty to have and exercise the knowledge of an expert on such product.

64. Defendant knew or should have known that the Defective Product created an unreasonable risk of bodily harm, including the risk of breaking and exploding causing serious and catastrophic injuries.

65. As designers, manufacturers, processors, packagers, distributors, marketers, sellers, users, appliers and suppliers of the Defective Product at issue, Defendant had a duty to exercise due care and the ordinary, reasonable and technical skill and competence that is required of designers, manufacturers, processors, packagers, distributors, marketers, sellers, suppliers, and others in a similar situation, including, without limitation, the duty to test its products; the duty to acquire and maintain the knowledge of an expert; the duty to design, manufacture,

process, distribute, market, sell, and/or supply its product free from defects and/or latent defects; the duty to adequately warn of product defects and/or hazards, which duty continued even after the sale of said products; and the duty to market, advertise, sell and supply products with adequate information and warnings about the risk of failure and propensity to cause serious injuries.

66. Defendant failed to use due care under the circumstances and thereby breached its duties as set forth above and was careless and negligent in the performance of its said duties to Plaintiff.

67. As a direct and proximate result of the dangerous and defective condition of Defendant's products and Defendant's failure to warn of the dangers thereof, Plaintiff suffered serious injuries and damages, including mental anguish and pain, disfigurement, incurred medical expenses, and Plaintiff's ability to function, work, labor, earn wages, and enjoy the ordinary pursuits of life have been seriously impaired.

68. At the time of Defendant's design, manufacture, processing, distribution, marketing, selling, supplying and/or use of the Defective Product at issue, Defendant knew of the dangerous condition of said products and supplied them with deliberate and/or intentional disregard for not making any warning, instruction, or other precaution to prevent injuries and thereby showed complete indifference to and/or conscious disregard for the safety of others. Defendant specifically placed profits ahead of the health and safety of others by intentionally omitting and

concealing material facts about the Defective Product's expiration date. Defendant's conduct which caused this damage was willful, wanton, and/or in reckless disregard for the rights of Plaintiff.

WHEREFORE, Plaintiff prays for judgment against Defendant for actual damages, in excess of the jurisdictional limit and as determined at trial, punitive damages, for the costs of this action, and for such further relief as the Court deems fair and reasonable.

## COUNT IV – BREACH OF IMPLIED WARRANTY

69. Plaintiff re-alleges and incorporates herein all other allegations in this Complaint.

70. Defendant is a merchant with respect to the sale of the Defective Product purchased by Plaintiff.

71. Defendant, by selling the Defective Product, impliedly warranted that the product was merchantable with respect to goods of that kind.

72. Defendant sold the Defective Product to Plaintiff through a retail store location in Oklahoma.

73. The Defective Product sold by Defendant to Plaintiff did not conform with the implied promises made with respect to the labels and packaging that accompanied the product, including that they could not be safely or reliably used.

74. The products were defective, as described above, and because of these defects and Defendant's refusal to disclose that they expire and to give the date of expiration, Plaintiff and other purchasers had no way to use the products safely

because they had no way of knowing when the products expired, including whether the products had already expired when purchased and used.

75. As a result of the failure to provide a clearly marked or identified expiration date on the Defective Product or its packaging, and because of the defects as described above, the Defective Product were not merchantable and Defendant breached its implied warranty of merchantability with respect to the Defective Product.

76. Had Plaintiff known that the Defective Product could not be safely or reliably used, due to the defects and omission of any expiration date, as further described above, he would not have used them. As a result of Defendant's breach of implied warranty, Plaintiff suffered serious injuries and damages, including mental anguish and pain, disfigurement, incurred medical expenses, and Plaintiff's ability to function, work, labor, earn wages, and enjoy the ordinary pursuits of life have been seriously impaired.

77. Defendant was provided with notice of breach, pursuant to K.S.A. §84-2-607(3)(a), on February 7, 2023.

WHEREFORE, Plaintiff prays for judgment against Defendant for actual damages, in excess of the jurisdictional limit and as determined at trial, punitive damages, for the costs of this action, and for such further relief as the Court deems fair and reasonable.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable in Kansas City, Kansas.

Dated February 10, 2023.

                                          Respectfully submitted,

                                          HUMPHREY, FARRINGTON, & McCLAIN, P.C.

                                          */s/ Paul D. Anderson*
                                          Paul D. Anderson KS Federal Bar #78899
                                          221 W. Lexington, Suite 400
                                          Independence, Missouri 64050
                                          Telephone:   (816) 836-5050
                                          Facsimile:    (816) 836-8966
                                          pda@hfmlegal.com
                                          Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed via the Court's electronic filing system this 10th day of February, 2023.

                                          */s/ Paul D. Anderson*
                                          **ATTORNEY FOR PLAINTIFF**